**AMERICAN UNIVERSAL INSURANCE COMPANY, a corporation, Appellant,**

v.

**Kermit A. KRUSE and First National Bank & Trust Company of Helena, Montana, Appellees.**

**No. 17522.**

United States Court of Appeals
Ninth Circuit.

Aug. 14, 1962.

---

Michael J. Hughes and George T. Bennett, Helena, Mont., for appellant.

Skedd, Harris, & Massman, and Hollis Gay Conners, Helena, Mont., for appellees.

Before HAMLIN and DUNIWAY, Circuit Judges, and ROSS, District Judge.

ROSS, District Judge.

Briefly, this is an action brought by Kermit A. Kruse[1] (hereinafter Kruse) against American Universal Insurance Company (hereinafter American) for the recovery of damages allegedly sustained by Kruse and for a declaratory judgment that American indemnify and hold Kruse harmless with respect to all claims for property damage caused by Plaintiff's truck and trailer on September 11, 1959. It is based on two alleged oral contracts of insurance. One contract, or policy, was a Combination Automobile Policy, and the other a Motor Truck Cargo Insurance Policy.

The action was commenced in a State Court of Montana and was removed by American to the United States District Court for the District of Montana, pursuant to the provisions of 28 U.S.C. § 1441, it being an action of which the latter court had original jurisdiction under the provisions of 28 U.S.C. § 1332, in that it was a civil action wherein the matter in controversy exceeded the sum or value of $10,000.00 exclusive of interest and costs, and was between citizens of different states.

Turning to the pertinent facts, it appears that on August 26, 1958, Kruse came to the office of Waite & Company in Bozeman, Montana,[2] for the purpose

---

1. First National Bank and Trust Co., of Helena, Montana was joined as an involuntary plaintiff.

2. Waite and Company were licensed agents for various insurance companies in the State of Montana.

of purchasing insurance for his truck.[3]

Among other things American states that very few companies authorized to do business in Montana were willing to write long haul truck insurance. None of those for which Waite & Company were licensed agents were willing to do so. Sam Kaisler, of Waite & Company, took Kruse's application for insurance on a form furnished by one of the companies for which Waite & Company were licensed agents. Kaisler went to his own office and telephoned Sogard General Agency in Great Falls, Montana[4] (hereinafter Sogard) to inquire whether it could place the insurance required by Kruse. Kaisler was advised that Sogard would write the policies required by Kruse. Kaisler advised Kruse that he was covered.

Kruse contends that except for the fact that Kaisler, of Waite & Company, took his application for insurance and advised him that he was covered, the facts contained in the above paragraph were unknown to him.

The two policies expired on August 26, 1959. On August 28, 1959, Kruse telephoned David Wetherell, of Waite & Company. His purpose was to be sure that he had insurance coverage because the truck was going on the road that night, and Wetherell said "he would take care of everything."

On September 11, 1959, Kruse's truck and trailer were being used to transport a cargo of asphalt. On said date they went off a highway and damaged the cargo as well as the truck and trailer and other property. American denied coverage on the alleged oral contracts of insurance entered into on August 28, 1959.

A bench trial was had and the court made certain findings of fact and conclusions of law, that were generally favorable to Kruse, and American appealed.

American argued five points which we will set forth and treat separately.

1. The District Court lacked jurisdiction because of insufficiency of the jurisdictional amount.

The original complaint claimed damages above the jurisdictional minimum. Defendant removed the case. Thereafter, it filed a motion to strike a paragraph of the amended complaint. The court struck said paragraph.[5] American contends that the amount in controversy then fell below $10,000.00.

The case was commenced in the state court and, therefore, there is a strong presumption that plaintiff has not claimed a large amount in order to confer jurisdiction on a federal court. See St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 290, 58 S.Ct. 586, 82 L.Ed. 845 (1938). Further, events occurring subsequent to removal which reduce the amount recoverable do not oust the court's jurisdiction once it has attached. Id. at 293, 58 S.Ct. 586. Moreover, American did not file a motion to remand, but merely made a motion to dismiss at the close of plaintiff's case. In view of the foregoing we are of the opinion that the court had jurisdiction.[6]

2. The testimony was wholly insufficient to establish any oral contract of insurance arising out of the telephone conversation of August 28, 1959.

On July 27, 1959, Wetherell wrote Kruse a letter in which he stated in part:

"Howdy old buddy! * * *. [A]lmost a year has gone by since you purchased your truck and we insured it for you. On August 26th your coverage will expire and we, of course, would like to renew it for you. I have gone over the policy with Sam [Kaisler] and he says

---

3. A truck and trailer.

4. The managing general agent for American in the State of Montana.

5. American asserts that this was done because the paragraph asked $130.00 per day damages for delay in payment and that this was a nonrecoverable or an improper measure of damage.

6. We are not prepared to say that from the face of the complaint it was obvious that the suit could not involve the necessary amount. Id. at 291, 292, 58 S.Ct. 586.

\* \* \* that he would recommend it being renewed on the same basis which we wrote it last year \* \* \*. If you want the coverage renewed just drop me a note and tell me to go ahead, and we will do it and bill you for it."

On August 28, 1959, Kruse called Wetherell. Among other things, Kruse testified on cross examination that:

"I told him [Wetherell] that I hadn't sold the truck, and that it was going on the road, and I wanted to be sure that the insurance was carried on." Kruse stated that he did not know if those were his exact words, "but, that was the intent." Further, that Wetherell said "he would take care of it."

In view of the language quoted from Wetherell's letter we believe that the testimony was sufficient to establish the oral contracts of insurance.

■ 3. American did nothing to confer on Wetherell or his employer any authority, actual or ostensible, to bind American by oral contract.

Kruse concedes that he could not prove that Waite & Company was licensed as an agent of American,[7] or that Waite & Company had an agency contract with American.[8] However, he asserts that he has tried the case upon the theory of ostensible agency and that ostensible agency is created in Montana [9] as much by negligence or inattention, as it is by affirmative acts.

In considering this matter it is necessary to examine the following pertinent facts.

On August 26, 1958, Kruse came to the office of Waite & Company for the purpose of purchasing insurance for his truck. He paid $700.00 in part payment for his insurance policies and received a receipt therefor from Waite & Company. Waite & Company gave Kruse a verbal binder.

In September 1958, Kruse received through the mail a certificate of insurance relating to the Combination Automobile Policy issued by American.[10] Said certificate was erroneously back dated to August 23, 1958. The certificate contained a line for the signature of American's authorized representative. Inserted above a portion of said line were the typewritten words "SOGARD GENERAL AGENCY." However, neither American nor Sogard placed their signatures on the signature line.[11] Waite & Company stamped "WAITE & COMPANY" above said line and wrote "G. C. Waite" thereon. With the certificate Kruse received an invoice for the premium on the policy. The invoice contained the printed name "WAITE & COMPANY."

In September 1958, Kruse received through the mail American's Motor Truck Cargo Policy.[12] This Policy was back dated to August 26, 1958. In the same envelope was an invoice for the premium on the policy and on the invoice was printed "WAITE & COMPANY".

On January 12, 1959, Kruse made a $500.00 payment.[13] On March 10, 1959, he paid Waite & Company $391.78. This was the final payment.

7. Or, Sogard, the managing general agent for American in the State of Montana.

8. See footnote 7.

9. "Ostensible agency. An agency is ostensible when the principal intentionally, or by want of ordinary care, causes a third person to believe another to be his agent who is not really employed by him." Rev.Code of Mont. (1947), Sec. 2–106.

10. Apparently this certificate was sent by Waite & Company.

11. By not signing the certificate across the top of the signature line American and Sogard made it possible for Waite & Company to sign its name thereon.

12. Apparently this policy was sent by Waite & Company.

13. It is not certain to whom this payment was made. However, at the time of making the initial payment of $700.00 Kruse made arrangements with Waite & Company to pay the balance. The billing was handled by Waite & Company, the two other payments were made to Waite & Company. Therefore, we can properly infer this payment was also made to Waite & Company.

On July 27, 1959, Waite & Company wrote Kruse the letter soliciting a renewal of the insurance policies.

From the above it appears that American dealt with Kruse exclusively through Waite & Company and did nothing to protect itself by advising Kruse that Waite & Company was not authorized to bind American. It thereby clothed Waite & Company with ostensible authority to bind American by oral contract. The insurance business, and the relationships between the insurance companies, insurance brokers, and insurance agents are much too complex to permit an assumption that an insured is supposed to know which agent represents whom when he isn't told. Therefore, American's third contention is without merit.

■ 4. Assuming a contract in existence, the district court should have applied the $500.00 deductible clause to both truck and trailer.

The printed provisions of the Combination Automobile Policy provide that a motor vehicle and a trailer attached thereto shall be separate automobiles as respects to the limits of liability, including any deductible provisions under collision or upset coverage.[14] However, on the face of the policy under "Limits of Liability" and adjacent to "Collision or Upset" only one figure "500" is typed thereon.[15]

It is a well recognized principle of contracts that where a contract is partly written (or typewritten) and partly printed the written (or typewritten) parts control. Also, it is a rule of construction that insurance contracts are to be construed in favor of the insured.

■ In accordance with these principles we believe that the single figure "500" mentioned above which was typed on the face of the policy, could properly be interpreted so as to apply the $500.00 deductible provision to the combined damage to the motor vehicle and trailer. Therefore, American's fourth contention is not well taken.

■ 5. Assuming a contract in existence, the district court erred in awarding to plaintiff the cost of transporting the cargo from the point of upset to the destination.

By transporting the cargo to its destination part of the cargo was salvaged and the damages were mitigated. Therefore, the court properly awarded to Kruse the cost of transporting said cargo.

In accordance with this opinion it is, therefore,

ORDERED, that the judgment of the District Court entered in the above entitled action is hereby affirmed.

---

14. As well as fire, lightning and transportation coverage and theft (broad form) coverage. Also, included are other coverages not purchased by Kruse.

15. On the other hand, under "Limits of Liability" and adjacent to fire, lightning and transportation coverage, two separate figures are typed thereon. Also under "Limits of Liability" and adjacent to theft (broad form) coverage, two separate figures are typed thereon.